WILBER E. SIMPSON v. GEORGE PATTON AND JAMES CARTER.

Judgment Rendered by J. P., Appointed to Fill Vacancy until Successor is Elected and Qualified, after Expiration of Original Term and Election of Another not Qualifying, is That of De Facto J. P. Colore Officii—Constitutionality of Act for Filling Vacancy in Office of J. P. not Questionable on Injunction against Enforcement of Judgment.

At the November election, 1907, one H. was duly elected a justice of the peace for a term of four years commencing January 1, 1908, and ending January 1, 1912. On February 3, 1910, H. resigned as such justice of the peace and pursuant to the provisions of Sec. 1714 G. C., the trustees of the township appointed one C. justice of the peace to fill the vacancy, until his successor should be elected and qualified and the governor issued a commission to C. authorizing and empowering him to make, execute and discharge all and singular the duties appertaining to such office until his successor was elected and qualified.

At the November election, 1911, a successor was elected who did not qualify and C. continued to act as such justice of the peace after the expiration of the term of H. whom he succeeded, until April, 1912, when he rendered the judgment complained of in this case.

Held, first, that in rendering the judgment complained of, C. was a "de facto" justice of the peace under color of office. Second, that the constitutionality of Sec. 1714 G. C. cannot be questioned in an action to enjoin the enforcement of such judgment.

[Syllabus by the court.]

REHEARING on appeal.

B. W. Rowland, for plaintiff.

D. A. Hollingsworth, for defendant:

Cited and commented upon by the following authorities: 5 Am. & Eng. Enc. Law 103; Ostrander v. People, 29 Hun. (N. Y.) 513; Gregg v. Jamison, 55 Pa. St. 468; McInstry v. Tanner, 9 Johns. (N. Y.) 135; Morrison v. Sayre, 40 Hun. (N. Y.) 465; People v. White, 24 Wend. (N. Y). 520; St. Louis Co. Ct. v. Sparks, 10 Mo. 117; Darrow v. People, 8 Colo. 417 [8 Pac. Rep. 661]; McCraw v. Williams, 33 Gratt (Va.) 510; Carland

Simpson v. Patton.

v. *Custer,* 5 Mont. 579 [6 Pac. Rep. 24] ; *Morton* v. *Lee,* 28 Kan.
286; *Woodside* v. *Wagg,* 71 Me. 207; *Carli* v. *Rhener,* 27 Minn.
292; [7 N. W. Rep. 139]'; *State* v. *Williams,* 5 Wis. 308 [68 Am.
Dec. 65] ; *Cary* v. *State,* 76 Ala. 78; *Threadgill* v. *Carolina,* 73
N. C. 178; *State* v. *Gardner,* 54 Ohio St. 24 [42 N. E. Rep. 999;
31 L. R. A. 660] ; *Burt* v. *Railway,* 31 Minn. 472 [18 N. W. Rep.
285] ; *Morris* v. *People,* 3 Denio (N. Y.) 381; *State* v. *Choate,* 11
Ohio 511; *State* v. *Alling,* 12 Ohio 16; *Taylor* v. *Skrine,* 2
Treadw. 696; *Case* v. *State,* 5 Ind. 1; *Creighton* v. *Piper,* 14 Ind.
182; *Plymouth* v. *Painter,* 17 Conn. 585 [44 Am. Dec. 574] ;
*Strang, Ex parte,* 21 Ohio St. 610; *Molitor* v. *State,* 3 Circ. Dec.,
445 (6 R. 263) ; *LeGrange* v. *Ward,* 11 Ohio 257, 261; *Smith* v.
*Lynch,* 29 Ohio St. 261; *Bushnell* v. *Koon,* 28 O. C. C. 367 (8
N. S. 163) ; affirmed, no op., *Koon* v. *Bushnell,* 71 Ohio St. 521.

## NORRIS, J.

The plaintiff in his petition seeks to enjoin the collection
of a judgment recovered before a justice of the peace.   He al-
leges in substance, in his second cause of action, that in the year
1907, one Samuel J. Hughes was elected justice of the peace
for Athens township, this county, for a term commencing Janu-
ary 1, 1908, and extending for a period of four years, which
would be to January 1, 1912; that on February 3, 1910,
Hughes resigned as such justice of the peace, and the trustees
of the township appointed James Carter, defendant, as such
justice, to fill the unexpired term of Mr. Hughes, who had re-
signed, and that thereafter the governor of the state com-
missioned Carter as such justice, under the law, for the un-
expired term, and until his successor should be elected and
qualified, as stated in the petition.

Now, at the November election, 1911, a successor was elected
for the term commencing in January, 1912, but that successor
did not qualify as such justice, and Carter continued to act as
justice until the following April, and the suit in question was
brought before him and tried during that month.   He heard the
case and rendered the judgment complained of, which would
be some months after the expiration of the terms of Hughes,

whom Carter was appointed to succeed, and to fill his unexpired term.

Now, it is claimed on the part of the plaintiff that the act, of Carter in rendering such judgment was entirely void, and it. raises the question as to whether or not he had a right to act as. such justice, or if he had not, whether his acts were that of a *de facto* officer acting under color of office so that the judgment. would be binding upon the parties. Section 1714 G. C. pro-- viding for appointment, reads as follows:

"If a vacancy occurs in the office of justice of the peace by death, removal, absence for six months, resignation, refusal to serve, or otherwise, the trustees within ten days from receiving notice thereof, by a majority vote, shall appoint a qualified resident of the township to fill such vacancy, who shall serve. until the next regular election for justice of the peace, and until his successor is elected and qualified. The trustees shall notify the clerk of the courts of such vacancy and the date when it. occurred."

In pursuance of that section the trustees appointed James. Carter for a justice of the peace, and the governor of the state on the fourth day of June issued a commission containing the following:

"Know ye, That whereas James Carter of Harrison county,. has been duly appointed to the office of justice of the peace, in. and for Athens township, until his successor is elected and qualified,

"Therefore, By virtue of the authority invested in the governor by the constitution, and in pursuance of the pro- vision of the statutes, I do hereby commission him, the said James. Carter, to be justice of the peace, as aforesaid, authorizing and empowering him to execute and discharge, all and singular, the duties appertaining to said office, and to enjoy all the privileges. and immunities thereof."

Now, by the statute, and by the commission of the governor, clearly James Carter had the right to continue to act as justice of the peace until his successor was elected and qualified, and it.

Simpson v. Patton.

is conceded that no successor had been elected and qualified at the time he rendered the judgment in question.

But it is said that that statute authorizing such appointment is in conflict with the provision of the constitution of the state which limits the office of justice of the peace to four years, and that the term of Hughes, whom Carter was appointed to succeed, expired on the first day of January, 1912, at the end of the term of four years; and it is, therefore, urged that this act is in conflict with the constitution and that the question of the constitutionality of the act can be raised in this case, and that is the question before this court—whether we may pass upon the constitutionality of this act when the judgment is collaterally attacked.

*Strang, Ex parte,* 21 Ohio St. 610, bears upon the question, propositions 1 and 2 of the syllabus:

"The acts of an officer *de facto,* when questioned collaterally, are as binding as those of an officer *de jure.*

"To constitute an office *de facto* of a legally existing office it is not necessary that he should derive his appointment from one competent to invest him with a good title to the office. It is sufficient if he derives his appointment from one having colorable authority to appoint; and an act of the general assembly, though not warranted by the constitution, will give such authority."

And this case had to do with the police judge in the city of Cincinnati, and in the opinion, after discussing the question, Judge White says:

"The direct question in this case is, whether the reputed or colorable authority required to constitute an officer *de facto* can be derived from an unconstitutional statute.

"The claim that it cannot, seems to be based on the idea that such authority can only emanate from a person or body legally competent to invest the office with a good title to the office. We do not understand the principle to be so limited. We find no authorities maintaining such limitation while we find a number holding to the contrary. *Fowler* v. *Bebec,* 9 Mass. 231; *Commonwealth* v. *Fowler,* 10 Mass. 290.

"The true doctrine seems to be, that it is sufficient if the officer holds the office, under some power having color of authority to appoint;.and that a, statute, though it should be found repugnant to the constitution, will give such color."

To the same effect is the case of *State* v. *Gardner,* 54 Ohio St. 24 [42 N. E. Rep. 999; 31 L. R. A. 660]:

"In a prosecution for offering a bribe to an officer, who is acting as such under a statute providing for the government of a municipal corporation, the defendant cannot question the con- stitutionality of such statute."

There are two opinions in this case, and reading somewhat from the opinion of Judge Spear, and from the authorities cited, we find quoted from *McKim* v. *Somers,* 1 Pen. & W. (Pa.) 297, this language:

"If a person usurp an authority to which he has no title, or color of title, his acts would be simply void, but a colorable title to an office can be examined only in a mode in which the officer is a party, and before the proper tribunal."

That was a case in which the officer was not a party and where his right to the office was involved, and to the same effect:

"*People* v. *Bangs,* 24 Ill. 184: 'Though a judge elected under a law not authorized by the constitution, shall be ousted because he is not an officer *de jure,* yet his acts *colore officii* will be valid.' "

And, quoting from *People* v. *Weber,* 86 Ill. 283:

"The title of a *de facto* officer cannot be inquired into in a collateral way between third parties, but it may be inquired into where he is suing in his own right as an officer."

To the same effect is *Leach* v. *People,* 122 Ill. 420 [12 N. E. Rep. 726]. Again quoting from the opinion:

"*Brown* v. *O'Connell,* 36 Conn. 432, was an action of debt on a recognizance given in the police court of Hartford. The constitution provided that all judicial officers should be ap- pointed by the general assembly. That body, by a statute, un- dertook to authorize the appointment of a judge of the police court by common council. The supreme court held that the ap- pointment was void, but that the appointee 'was a judge *de*

Simpson v. Patton.

*facto'* and that a recognizance entered into before him in the police court for the appearance of a prisoner was valid and binding.''

Then quoting from the work of Van Vleet, Collat. Attack page 33, we find the following:

''If it is necessary, in order to guard the rights of the public, to hold the acts of an actual although unlawful incumbent of a judicial office valid, as being done by an officer *de facto,* then a *fortiori* is it necessary to hold an actual judicial tribunal, erected under the forms of law, sustained by the power of the state, and settling rights and titles, a tribunal *de facto.''*

Then again:

''The *de facto* character of the officer is not impaired because he was appointed by virtue of a void statute. Thus, a judge appointed by the governor, or a city council, or transferred to another district; or a probate clerk, or district attorney, appointed by authority of an unconstitutional statute; and county officers elected in a new county before the law organizing it could take effect, are all officers *de facto.''*

Now, how stands this case? By the statute of the state, duly passed, the trustees were clothed with authority to appoint a justice of the peace to succeed Hughes, resigned, for the unexpired term, and until his successor was elected and qualified. In pursuance of such appointment and the governor's commission Carter continued to act as justice of the peace, affecting the rights of litigants brought before him. He had the color of the statute and the commission of the chief executive of the state for his authority to act as such justice.

Now, it seems to us that he was acting under color of office and was a *de facto* justice of the peace at the time he rendered this judgment. We are not unmindful of the decision in the case of *Bushnell* v. *Koon,* 28 O. C. C. 367 (8 N. S. 163), holding that acts of a justice of the peace after his term had expired was absolutely void. But we think that is clearly distinguishable from this case; he had absolutely no color of office; he was not appointed for such a period; he was commissioned for a period of four years, and his term expiring at a certain date, and after

that date he assumed to continue to act as such justice of the peace. We think this case is not like that.

It follows that a decree will be entered in this case finding that the act of the justice was the act of a *de facto* magistrate, and the judgment will be sustained and the case dismissed.

**Metcalfe** and **Pollock, JJ.,** concur.

---

## GIFTS—PRINCIPAL AND AGENT.

[Lawrence (4th) Court of Appeals, March 25, 1913.]

Walters, Sayre and Jones, JJ.

GEORGE W. MERCHANT AND CATHERINE M. MERCHANT V. GERMAN BUILDING & LOAN COMPANY, ET AL.

**Endorsement and Delivery of Certificate of Deposit to Donor's Brother in Presence of, and Declaring Same Gift to be Delivered to, Donor's Parents, does not Effect Valid Complete Delivery, Donor Retains Dominion over Certificate Held by Brother as Agent.**

Dr. Merchant was the owner of a certificate of deposit, issued to him on December 29, 1910. Soon thereafter, in the donees' presence, he endorsed and delivered the certificate to his brother, declaring it was a gift to the donees to be delivered to them. This donor informed donees.

The brother did not deliver the certificate to donees until after donor's death on May 1, 1912. In the meantime the donor had received three semi-annual interest checks, which he endorsed and returned to the B. & L. company, it affirmatively appearing he used the proceeds of the last check. Held:

1. From the facts stated, the brother is presumed to have been the agent of the donor and that donor retained dominion over the certificate.

2. There was no valid, completed delivery.

[Syllabus by the court.]

ERROR to common pleas court.

*A. J. Layne,* for plaintiff in error.

*E. E. Stewart,* for defendants in error:

Burden of proof, Thornton, Gifts 189; 20 Cyc. 1219, 1223; *Beaver* v. *Beaver,* 137 N. Y. 59 [32 N. E. Rep. 998]; *Flanders* v. *Blandy,* 45 Ohio St. 108 [12 N. E. Rep. 321].

Essentials of gift inter vivos, *Flanders* v. *Blandy,* 45 Ohio St. 108 [12 N. E. Rep. 321]; 20 Cyc. 1192.