———————

(No. 16366.—Judgment affirmed.)
THE PEOPLE *ex rel.* Guy Hicks, County Collector, Appellee, *vs.* ELIZABETH LYCAN *et al.* Appellants.

*Opinion filed December 16, 1924.*

1. OFFICES—*acts of officer de facto are valid.* A person actually performing the duties of an office under color of title is an officer *de facto,* and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned.

2. TAXES—*when organization of a board of review cannot be questioned.* The fact that a board of review is not composed of two members of the political party polling the highest vote and one member of the party polling the second highest vote, as required by law, cannot affect the validity of its acts in reviewing assessments, and in a proceeding by the county collector is not ground for refusing to pay taxes levied on an assessment made by such board.

3. SAME—*increase in assessment cannot be made without notice.* The board of review has no power to make an increase in an assessment without notice to the owner or his agent and an opportunity to be heard, and the giving of such notice is jurisdictional.

4. Same—*notice to increase assessment must conform to statute and describe property.* Notice of a proposed increase in the assessment of property must conform to the statute and binds the tax-payer only as to the description and character of the property mentioned in the notice.

5. Same—*when notice to agent of heirs is sufficient to authorize increased assessment.* Notice to an heir who had been administrator of the ancestor's estate and who was acting as agent of the other heirs in the management of the property is sufficient to authorize action by the board of review to increase the assessment of property of the estate, where there is evidence that the notice described the property as belonging to the estate and lying in a certain township and recited that the board of review was contemplating raising the assessment.

6. Same—*when action of board of review in assessing property will not be disturbed.* An assessment of real estate cannot be relieved against for a mere error in judgment of the assessing officers, and where there is no evidence that farm land is assessed more than its value or disproportionately to other land in the township the action of the board of review in increasing the assessment will not be disturbed, in the absence of fraud.

7. Same—*excessive valuation may be considered to show fraud.* The circumstances under which an assessment was made may be considered by the court, in connection with an excessive valuation, to show fraud and establish that the assessment was not the result of the honest judgment of the assessing officers.

Appeal from the County Court of Edgar county; the Hon. Paul B. Lauher, Judge, presiding.

Fred Rhoads, for appellants.

George W. Bristow, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

In August, 1923, the board of review of Edgar county raised the assessment of two tracts of land of 172.94 acres and 80 acres, respectively, assessed in the name of the H. Lycan estate. Lycan had died several years before 1923, leaving seven children as his heirs. His son Harry was appointed administrator and settled the estate and was discharged in 1921. Afterward, by consent of the other co-

tenants, he attended to the renting of the land, the collection of rents and the payment of taxes. In the spring of 1924 when he went to pay the taxes he discovered the increase in the assessment. He paid the taxes according to the assessor's valuation but declined to pay on the increased valuation of the two tracts, they were returned delinquent, and the county collector at the June term of the county court applied for judgment against the two tracts and an order for their sale. From the judgment overruling their objections and ordering a sale the owners have appealed.

The objections insisted on which are presented and argued are: (1) The board of review was not lawfully constituted, because the statute requires it to be composed of three members, of whom two shall be affiliated with the party polling the highest vote and one with the party polling the second highest vote at the general election in the county prior to the time any appointment is made, and this requirement of the statute was not observed in the constitution of the board; (2) the owners were not notified before the increase of the assessment; (3) the increased valuation was fraudulently made.

Section 30 of the Assessment act of 1898 provides that there shall be a board of review in each county, of which the chairman of the board of supervisors shall be *ex-officio* chairman, and there shall be two additional members, who shall be appointed by the county judge. The term of office is fixed at two years and one member is to be appointed annually. It is further provided that the board of review shall at all times consist of two members affiliated with the political party polling the highest vote and one member of the party polling the second highest vote at the general election in the county prior to the time any appointment is made. The republican party cast a majority of the votes in the county of Edgar at the last general election prior to 1923. In 1923 George Roll, who was chairman of the county board and *ex-officio* chairman of the board of re-

view, was a democrat, and the other members were Dan Halloran, a democrat, and Ray English, a republican. Thus the board was composed of one member of the party polling the highest vote and two members of the party polling the second highest vote, instead of two members of the party polling the highest vote and one member of the party polling the second highest vote. This fact did not, however, make the action of the board of review so constituted void. A person actually performing the duties of an office under color of title is an officer *de facto,* and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned. (*People* v. *Lieb,* 85 Ill. 484; *People* v. *Bangs,* 24 id. 184; *Leach* v. *People,* 122 id. 420.) Whether the board of review was legally constituted or not, the persons acting as such board were performing the duties of the board with apparent right under color of office, and their acts were valid as to the public and persons having an interest in them.

The board of review had no power to make an increase in the assessment without notice to the owners and an opportunity to be heard. An increase of assessment without notice is without authority of law and is void. (*Cox* v. *Hawkins,* 199 Ill. 68; *People* v. *Centralia Gas Co.* 238 id. 113; *People* v. *Nokomis Coal Co.* 308 id. 45.) The clerk of the board of review identified page 219 of the journal, showing that on August 7 a notice was sent to Harry Lycan to appear on August 10. The clerk testified that the entry was in his handwriting and that he sent a notice to Harry Lycan at Vermilion. He did not know just what the notice contained, more than to specify that the property was in Symmes township and that the board of review was contemplating raising the assessment. Harry Lycan testified that he is the son of Hiram Lycan and received a notice from the board of review in the summer of 1923; that the envelope was addressed "Dr. Harry Lycan" and the notice was to Harry Lycan, administrator. He had tried to find

314—38

the notice but could not do so. He did not receive any other notice of any kind. He was acting as administrator until the estate was settled and was discharged but had never been appointed agent but had looked after the farm and collecting of the rents by mutual consent; that he was acting with the other heirs' approval, if anything came up in superintending the farm. The notice which he received did not describe any real estate, but simply said in the case of Hiram Lycan estate, as near as he could recollect.

The statute requires that the assessment of the property of any person shall not be increased unless such person or his agent, if either be a resident or has a place of business in the county, shall first have been notified in writing and been given an opportunity to be heard. This notice was jurisdictional. It was necessary that it should conform to the statute, and it only binds the tax-payer as to the description and character of the property mentioned in the notice. Though Harry Lycan testified that he had never been appointed agent, still he was acting, with the other heirs' approval, in superintending the farm, renting it and collecting the rents, and he was the proper person to receive the notice which was sent to him and which he states he did receive. The notice was addressed to Harry Lycan, administrator, and enclosed in an envelope addressed to Dr. Harry Lycan. He received it and read it personally, and the object of the statute was fulfilled, which was that the owner or his agent should have notice and an opportunity to be heard on the question of an increase of the assessment. He says the notice did not describe any real estate but simply said, "In the case of Hiram Lycan estate," as near as he could recollect. The clerk testified that he did not know just what the notice contained, more than to specify that the property was in Symmes township and that the board of review was contemplating raising the assessment. The testimony of these two witnesses sufficiently shows that notice was given that the board of review was

contemplating the raising of the assessment on real estate in Symmes township which had belonged to Hiram Lycan. in his lifetime.   Dr. Lycan knew that he had been discharged as administrator two years before and that the notice referred to the land which he and his brothers and sisters had inherited from their father.   He had an opportunity to be heard, and as that was the only object in giving the notice it was sufficient.

The testimony of witnesses was introduced as to the value of the land and the comparative value of other tracts of land in the neighborhood.   The total increase in value of the 252.94 acres of the Lycan estate was $4532,—a little less than $18 an acre.   There were two other cases of an increase in the assessment in the township,—one of $1120 and another of $300,—and assessments were lowered on different properties to the amount of $2120.   The land is assessed higher than various other tracts which are mentioned in the neighborhood in amounts varying from $2.50 to $14.75 an acre, but no witness has expressed any opinion on this record as to the value of the land in controversy, or any other land, except by comparison with other tracts. There is no evidence that the land in question is assessed more than its value or disproportionately to the other land of the township in general.   An assessment of real estate cannot be relieved against for a mere error of judgment of the assessing officers.   The circumstances under which an assessment was made may be considered by the court, in connection with an excessive valuation, to show fraud and establish that the assessment was not the result of the honest judgment of the assessing officers, but the evidence in this case is wholly insufficient for that purpose.

The judgment of the county court will be affirmed.

*Judgment affirmed.*