(No. 31719.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JOSEPH BEAUHARNAIS, Appellant.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

Maximilian J. St. George, of Chicago, for appellant.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, and Albert I. Zemel, all of Chicago, of counsel,) for the People.

Mr. Justice Fulton delivered the opinion of the court:

This is a criminal prosecution, in the municipal court of Chicago, against the appellant, herein termed defendant, Joseph Beauharnais, for a violation of section 224a of division I of the Criminal Code, (Ill. Rev. Stat. 1949, chap. 38, par. 471,) which reads as follows:

"It shall be unlawful for any person, firm or corporation to manufacture, sell, or offer for sale, advertise or publish, present or exhibit in any public place in this state any lithograph, moving picture, play, drama or sketch, which publication or exhibition portrays depravity, criminality, unchastity, or lack of virtue of a class of citizens, of any race, color, creed or religion which said publication or exhibition exposes the citizens of any race, color, creed or religion to contempt, derision, or obloquy or which is pro-

ductive of breach of the peace or riots. Any person, firm or corporation violating any of the provisions of this section, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than fifty dollars ($50.00), nor more than two hundred dollars ($200.00.)"

The amended information filed on March 6, 1950, charged "that defendant on January 7, 1950, at the City of Chicago, did unlawfully publish, present and exhibit in public places, lithographs, which publications portrayed depravity, criminality, unchastity or lack of virtue of citizens of Negro race and color and which exposes citizens of Illinois of the Negro race and color to contempt, derision, or obloquy, which more fully appears in Exhibit A, which is attached hereto and made a part thereof."

Exhibit A referred to is a printed sheet of paper and in the form of a petition to Mayor Kennelly and to the city council of the city of Chicago. It is headed in large, black letters as follows:

"PRESERVE and PROTECT WHITE
NEIGHBORHOODS!

FROM THE CONSTANT AND CONTINUOUS INVASION,
HARRASSMENT AND ENCROACHMENT
BY THE NEGROES."

In the body of the page it solicits the aid of one million white people in the city of Chicago to oppose the national campaign now on and supported by "Truman's Infamous Civil Rights Program" and many pro-Negro organizations to amalgamate the black and white races with the object of mongrelizing the white race. It points out that the "White Circle League of America" is the only white voice being raised in protest against Negro aggression; that white people must take advantage of this opportunity to become united; that "if persuasion and the need to prevent the white race from becoming mongrelized by the Negroes will

not unite us, then the aggressions . . . rapes, robberies, knives, guns and marijuana of the negro, surely will."

The entire exhibit is full of similar charges and inflammatory, anti-Negro language, appealing to the white people of the nation to force denial of equal rights to Negro citizens as guaranteed to them by the constitution of the United States.

The language used in the exhibit is the source of complaint by the prosecution. The circulation of copies of this exhibit on the streets of the city of Chicago, the solicitation of agents to conduct the distribution of same, and general direction of the movement by the defendant constitute part of the charge.

The case was tried before a jury, which found defendant guilty as charged in the information and fined him the sum of $200. Motions for new trial, for judgment notwithstanding the verdict, and in arrest of judgment were overruled, and judgment entered upon the verdict. Defendant brings an appeal direct to this court because the constitutionality of the section above quoted is challenged.

The defendant on the witness stand admitted that he was the founder, president, and director of the organization known as the "White Circle League of America;" that the literature in question was prepared by him or by someone else under his direction. He further admitted that he gave the said literature to agents with specific instructions as to how it should be distributed on the public streets of the city of Chicago, all of which was carried out and performed. The alleged lithograph follows with a plea for membership in the White Circle League.

Defendant's main defense is that section 224a, hereinbefore quoted, is unconstitutional because it violates the first amendment to the constitution of the United States and section 4 of article II of the constitution of the State of Illinois, both of which guarantee to the people the right of free speech and freedom of the press. He further in-

sists that said section 224a is unconstitutional because it deprives citizens of life, liberty or property without due process of law, as provided in the fourteenth amendment to the constitution of the United States, and that it offends section 17 of article II of the constitution of Illinois providing, "The people have the right to assemble in a peaceable manner to consult for the common good, to make known their opinions to their representatives, and to apply for redress of grievances."

It is claimed by the defendant that not only freedom of the press but also freedom of assembly and right to petition the government for a redress of grievances are threatened in this case.

In support of his contentions, defendant cites *Thornhill* v. *Alabama,* 310 U.S. 105. In that case a State statute forbidding loitering or picketing during a strike was involved, and the court upheld the right of peaceful picketing during labor disputes. Also cited was *Terminiello* v. *City of Chicago,* 337 U.S. 1. There the defendant was convicted of disorderly conduct under a city ordinance. The ordinance, as construed by the trial court in his charge to the jury, permitted conviction of the defendant if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest. The Supreme Court of the United States held that a conviction resting on any of those grounds may not stand, and reversed the case.

In *Near* v. *Minnesota,* 283 U.S. 697, an attempt was made to enjoin the publication of a Minneapolis newspaper because of the publication of scandalous matter. In none of the above cases was a statute similar to the present one involved, and neither are those cases conclusive of the questions arising in this case.

The Supreme Court of the United States and this court have held that the freedom of speech and of the press, which is secured by the constitution, does not confer an absolute right to speak or publish, without responsibility,

whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and prevents the punishment of those who abuse this freedom. *Gitlow* v. *People,* 268 U.S. 652; *Chaplinsky* v. *New Hampshire,* 315 U.S. 658; *People* v. *Doss,* 384 Ill. 400.

Section 224a, in question, is a form of criminal libel law authorized by the constitution of the State of Illinois, and whether or not the defendant abused the freedom of speech granted by section 4 of article II of that constitution is the primary question in this case. In *Schenck* v. *U.S.* 249 U.S. 47, the principle was announced as follows: "The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about substantive evils that Congress has a right to prevent."

A mere reading of the libelous publication in question here refers to Negroes as a class possessing various criminal tendencies, unchastity, and degrading sexual inclinations, all of which are "fighting words" liable to cause violence and disorder between the races. Any ordinary person could only conclude from the libelous character of the language that a clash and riots would eventually result between the members of the White Circle League of America and the Negro race.

The very statute which defendant challenges as unconstitutional was upheld in the case of *Bevins* v. *Prindable,* 39 Fed. Supp. 708, and affirmed by the United States Supreme Court in a memorandum opinion at 314 U.S. 573.

We do not find any merit in the claim that the statute is too broad in scope, or that the words of the statute are vague. We further believe that the controverted exhibit is sufficiently described as a lithograph and further as a publication within the terms of the statute.

It is also urged by defendant that the court erred in refusing defendant the right to prove the truth of the

alleged libel, because section 179 of division I of the Criminal Code, (Ill. Rev. Stat. 1949, chap. 38, par. 404,) provides as follows: "In all prosecutions of libel, the truth, when published with good motives, and for justifiable ends, shall be a sufficient defense." Defendant made an offer of proof purporting to show that in white districts in Chicago the number of offenses reported were much smaller in number than those reported in districts largely populated by Negroes. He further offered to prove by witness Frank Lindstrom that his brother was shot by a Negro and that when a Negro family moves into a district or a block, real estate values immediately go down, and that the home of the said witness had depreciated in value about $2000. The People objected to the offer and the objection was sustained. The admission of such proof would be directed only as to a portion of the offense charged and could not in any manner be classed as published for good motives and for justifiable ends. In fact, it is hard to see how, with the libelous publication in evidence, any proof of good motives or justifiable ends could be introduced. The trial court very properly denied the admission of the offered proof. (*People* v. *Spielman,* 318 Ill. 482; *People* v. *Fuller,* 238 Ill. 116.) Neither did the court err in denying defendant's motion for a directed verdict nor in the giving of the complained-of instruction to the jury.

The libelous and inflammatory language used in said exhibit A was designed to breed hatred against the Negro race and is not of such character as entitles defendant to the protection of freedom of speech guaranteed by the State and Federal constitutions.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*